```
              UNITED STATES DISTRICT COURT
                DISTRICT OF NEW HAMPSHIRE
```

Mary Jane O'Neill

    v.                                    Civil No. 14-cv-48-JL
                                                        Opinion No. 2015 DNH 032

Carolyn W. Colvyn, Acting Commissioner,
Social Security Administration

**ORDER ON APPEAL**

    Mary Jane O'Neill has appealed the Social Security Administration's denial of her application for a period of disability and disability insurance benefits.[1] An administrative law judge at the SSA ("ALJ") ruled that, despite O'Neill's severe impairments (peripheral vascular disease--also known as "Raynaud's syndrome"--scoliosis, and reduced vision in one eye), she remains capable of performing her past relevant work, as a secretary, and, as a result, is not disabled. See 20 C.F.R. § 404.1505(a). The Appeals Council later denied O'Neill's request for review of the ALJ's decision, see id. § 404.968(a), with the result that the ALJ's decision became the final decision on O'Neill's application, see id. § 404.981. O'Neill appealed the decision to this court, which has jurisdiction under 42 U.S.C. § 405(g) (Social Security).

---

[1] O'Neill's first name is spelled a number of different ways in her submissions, including "Mary-Jane," "MaryJane," "Maryjane," and "Mary Jane." The court has used the last of these, since it is how O'Neill wrote her own name on several forms she filed with the SSA.

O'Neill has filed a motion to reverse the decision. See L.R. 9.1(b)(1). She argues that, in finding that O'Neill could perform her past relevant work as a secretary, the ALJ failed to properly account for the effects of either O'Neill's reduced vision or her Raynaud's syndrome (which impacts her use of her hands). O'Neill further asserts that the ALJ erred by ignoring the opinion of a state health department physician that O'Neill's migraine headaches amounted to a severe impairment. The Acting Commissioner of the SSA has cross-moved for an order affirming the ALJ's decision, see L.R. 9.1(d), arguing that he adequately considered the record evidence. For the reasons explained fully below, the court agrees with the Commissioner, and therefore grants her motion to affirm (and denies O'Neill's motion to reverse) the ALJ's decision.

In deciding whether a claimant can perform her past relevant work, an ALJ compares its physical and mental demands to his assessment of the claimant's residual functional capacity ("RFC"). See 20 C.F.R. § 404.1560(b). Here, in relevant part, the ALJ found that O'Neill retained the RFC for sedentary work, with certain postural and environmental limitations (including no concentrated exposure to cold) as well as that "[d]ue to left eye blindness, she has limited depth perception, but she is able to read a computer screen." Based on this finding, a vocational

expert who testified at the hearing opined--and the ALJ then ruled--that O'Neill could indeed perform her past relevant work as a secretary.

O'Neill argues that this finding was in error because "it failed to address the impact her peripheral vascular disease would have on her ability to perform secretarial work which requires frequent use of the hands and fingers."  In reaching his RFC determination, however, the ALJ specifically noted that, while O'Neill "alleges that her peripheral vascular disease causes her great pain in her hands and feet preventing her from writing, typing and walking," her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible."  The ALJ explained that O'Neill's "medical records do not show persistent functional limitations due to Raynaud's syndrome," but, instead, document normal clinical findings.  The ALJ further observed that a physician who completed a consultative examination of O'Neill, Dr. Matthew Masewic, concluded that, while she has "a history consistent with Raynaud's, this has only a mild effect on her functional capacity, and that she should avoid cold conditions."  The ALJ gave Masewic's opinion great weight because, among other reasons, "it is consistent with the medical evidence of record and

[O'Neill's] reported daily activities, which show the ability to carry out a fairly full, active lifestyle."

In her motion to reverse the ALJ's decision, O'Neill does not acknowledge any of this reasoning, let alone try to show that it was in error.  Her only reference to the record evidence, in fact, is to her own testimony at the hearing as to the limiting effects of her Raynaud's syndrome--testimony which, as just discussed, the ALJ found not to be credible for reasons that, as just noted, O'Neill has not even addressed.

While this is perhaps inevitable--given that no medical source of record has ever differed with Masewic's opinion that O'Neill's Raynaud's syndrome imposes only a "mild effect on functional capacity"[2]--it is nonetheless problematic, since the law "requires the ALJ to evaluate the credibility of a claimant's testimony about her symptoms and their limiting effect in light of all the other evidence of record, rather than to simply accept the testimony as true."  Scanlon v. Astrue, 2013 DNH 088, 15 n.4 (citing SSR 96-7p, Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 374186 (S.S.A. 1996)).  Because the only

---

[2]O'Neill's motion does not argue that the "mild" effect that Masewic found her Raynaud's syndrome to impose upon her functional capacity would prevent her from doing the fingering and handling tasks required of her as a secretary.  Again, O'Neill simply does not address Masewic's opinion.

4

record evidence that O'Neill identifies to support her alleged disabling manipulative limitations was her own testimony, and the ALJ supportably found that testimony not to be credible, the ALJ's decision not to incorporate those limitations into his RFC finding was supported by substantial evidence (including Masewic's uncontradicted opinion).  See id. at 13-16.

The same conclusion follows, for the same reasons, as to the ALJ's finding that, due to O'Neill's blindness in one eye, she has "limited depth perception, but she is able to read a computer screen."  The ALJ specifically found that this "left eye impairment does not result in disabling functional limitations," relying on O'Neill's testimony that, while "she has had this vision loss in her left eye since she was 9 years old . . . [,] she was able to work as a secretary for many years," as well as "to help her son with homework, do some chores around the house, and read with a magnifying glass."  The ALJ further relied on Masewic's opinion that O'Neill's "unilateral blindness has only a minimal effect on functional capacity" (which, as the ALJ noted, was supported by Masewic's finding it "difficult to imagine that [O'Neill] cannot keep a car from driving to the middle of the road" due to her vision problem--as she had claimed--since "she would also then ambulate in such a manner"--which she does not).

5

O'Neill's motion to reverse does not address the ALJ's reasoning or point to any contrary evidence aside from her own testimony (which, again, the ALJ did not find fully credible). Like his decision not to incorporate any manipulative limitations into O'Neill's RFC, then, the ALJ's decision not to incorporate any visual limitations, aside from "limited depth perception,"[3] is supported by substantial evidence.

Finally, O'Neill argues that the ALJ erred in failing to address the opinion of a state health department physician that O'Neill's migraine headaches amounted to a severe impairment. As the ALJ noted in his decision, the agency physician, Dr. Burton Nault, identified O'Neill's migraines among other severe medically determinable impairments--but also found, as the ALJ also noted, that neither the migraines nor the rest of her impairments were disabling. Indeed, in discussing O'Neill's RFC, Nault called her migraines "infrequent and short-lived."

So it is at best unclear what O'Neill means when she says in her motion that "Nault's opinion regarding the impact [her] migraines have on her functional capacity was significant probative evidence contrary to the ALJ's determination." Nault's

---

[3] In testimony that O'Neill does not challenge, the vocational expert specifically stated that O'Neill could do her past work as a secretary even with "limited left eye depth perception."

opinion as to O'Neill's migraines, as the ALJ specifically noted in his decision, was entirely consistent with his finding that they did not amount to a disabling impairment.[4]

For the foregoing reasons, O'Neill's motion to reverse the ALJ's decision[5] is DENIED and the Commissioner's motion to affirm the ALJ's decision[6] is GRANTED. The clerk shall enter judgment accordingly and close the case.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated: February 20, 2015

cc: Peter K. Marsh, Esq.
    T. David Plourde, AUSA

---

[4]Insofar as O'Neill is suggesting that the ALJ erred by not finding her migraines to be severe, that error, as such, was harmless, since the ALJ, having identified other severe impairments, specifically took account of what he found to be O'Neill's non-severe headaches in assessing her RFC. See, e.g., Santiago v. Astrue, 2013 DNH 048, 5.

[5]Document no. 5.

[6]Document no. 8.